May it please the Court, Gregory Merkley, Federal Defenders of San Diego, on behalf of Mr. Marguet-Pillado. Your Honors, this appeal raises a question about the interaction between old INA 309, or 8 U.S.C. 1409, and INA 301, which provides generally for the acquisition of citizenship. Because this is primarily a question of statutory interpretation, potentially exclusively a question of statutory interpretation, I have printed out copies of the relevant statutes and would be grateful for an opportunity to pass them forward to the Court. Give them to the Clerk. Of course, these are in the briefs also. Your Honors, as the Court will see, INA 301A7, erroneously written INA 307A7, provides that the fault that a person born outside the United States, parents, one of whom is a United States citizen and one of whom is not, will acquire citizenship as of the time of their birth, provided that the U.S. citizen meets certain residency requirements. INA 309, as it existed until 1986, however, explicitly expanded the reach of INA 301A7 to include all children for whom paternity was established by legitimation while the child was under the age of 21. And importantly, that was a retrospective analysis. So INA 309 provided that the provisions of paragraph 7 of 301A shall apply, quote, as of the date of birth, provided that the paternity of the child is established while the child is under the age of 21. The question of whether paternity is established by legitimation, in turn, turns on analysis of 1101B1C, as it existed at the time of Mr. Margay's birth, which explicitly deferred to the law of either the state or the domicile. In this sense, it was the federal government operating in its traditional role, that is, privileging the state or foreign law determination of the family relationship, which the federal government has not traditionally been involved in. Here, because the government no longer disputes that Mr. Margay's paternity was established by legitimation, while under the age of 21, under Mexican law at a minimum, and certainly we've argued under California law also, he satisfies the requirement of INA 309, therefore also qualifies under INA 301, and is a citizen. Accordingly, the immigration judge erred in denying his motion to dismiss or to terminate proceedings based on the citizenship, and the district court here erred when she failed to permit us to present that question to the jury. The government has argued, despite this syllogism, this reading of the statute, that there is an implied, if not explicit, requirement of a blood relationship. And in that regard, I think the court's prior rulings in both Scales and Solis-Espinosa are illustrative. In those cases, the court applying the sort of standard analytical models for analyzing immigration statutes concluded that the phrase, born of parents, could not be read to require a blood relationship between the child and the parent. In fact, because such a reading would be contrary to the well-established legislative history of the Immigration and Nationality Act, which was to privilege family relationships such as the sort that Mr. Margay and his father undisputedly had here. In that case, this court held, in those two cases this court held, that to read an additional requirement of a blood relationship into a statute that does not by its terms require that would frustrate congressional intent rather than fulfilling it. Well, how does the word parent require some kind of relationship either by adoption or blood? This Court concluded in — it requires a — yes, Your Honor. It requires that there be a real relationship, that paternity, that is, fatherhood, be established by legitimation. So — and the Court — the Court is, I think, I suspect, concerned that my interpretation, what I believe is the straightforward interpretation of the statute, will subsume other provisions of the INA relating to adoption. I can only say that it appears that Congress, in its wisdom, provided multiple paths for the acquisition of citizenship. They are not exclusive paths. You mentioned scales, I think. Yes, Your Honor. That was a little different from this case, was it not? It was, Your Honor. Because the people were married at the time, at least. That's right, Your Honor. And as far as — you mentioned Solis Espinosa. That's a little different, too, because the father was the blood father of the child. Is that not true? Yes, Your Honor. That's right. So both of those cases are slightly different from this, or quite different, really. Yes, Your Honor. In the sense — Even historically or currently, they were quite different animals. Yes, Your Honor. Neither of those cases raised the question brought here. Both of those questions were INA 301 cases and limited the scope of their ruling to the meaning of INA 301. But they are instructive, both of them, in the sense that they tell us how to analyze the immigration statutes at issue here. They tell us that we should not read into words that have more than one wording, that is, of parents or paternity by legitimation, an additional requirement of a blood relationship, that Congress, in its wisdom, has sought, has determined not to make explicit. And to that extent, those cases can and should direct this Court's analysis of INA 309, which the Court is correct, was not at issue at either scales or Solis Espinosa. I'd just like to — I'm approaching the end of my prepared comments, but I'd like to sort of emphasize that this is a — this is not — it should not be such a sort of far-fetched reading of the immigration statutes here, although — and, in fact, we — although it does not appear to have been — I have found no case in which this analysis has appeared before an appellate court. It may very well have been adjudicated and lower in the administrative process. You know, if you're at the end of basically reaching the end of those comments, do you want to say anything about the evidence question, which seems to me a very serious question in this case? Why the ball was dropped on the shirt? It was dropped, it looks like, maybe. But do you want to talk about the evidence? Was there — was the application improperly admitted as to Hirsch's error? Were you worried about that? Oh, I absolutely think it was, Your Honor. The — we had a — as the Court will see, we had this case proceeded to a bench trial, primarily with stipulated facts. And the — but one thing that was never stipulated to was Mr. Marget's alienage, for exactly the reasons that were here before the Court. In that, importantly, however — and we made clear to the government and to the Court that we would contest any evidence on that score. The government chose not to submit evidence on that score. Well, it submitted — it submitted the application. It submitted an application that you called hearsay. Yes. From Michael, in which Michael very clearly said he was — he's a citizen of Mexico, he was born in Mexico, he's not my child. I just put myself down so I could get them an easy immigration. Clearly he said that. Assuming that is admissible, that's kind of problematic for your position. You think it's not admissible? Yes, Your Honor. Because it's hearsay. I think it's — I think it's hearsay without foundation. I think it's not admissible. I also think that not all of the facts that the Court just stated were actually present in that application. For example, but regardless, I certainly think it's not admissible. Court, I am endeavoring to save a moment for rebuttal. Thank you. Okay. We'll extend a minute or two for your rebuttal. Steve Miller for the United States. One of the comments counsel made during this argument was that Congress intended different paths. But I think that if you examine the proposed path to naturalization through the legitimization as proposed by the defense, it does not make sense because it permits a foreign national to take a unilateral sub rosa action that would cause naturalization, which would really frustrate the entire policy and purpose behind the Naturalization Act by depriving the government of due process and inviting exactly the type of fraud that was addressed by Miller v. Albright. That's a great concern in the immigration code, is that the immigration code is sort of a system of first refusal. Anyone can ask to come in or remain in the United States, but you have to provide us, the United States, perfected information so we can make a knowing and intelligent decision whether to permit this applicant to come into the United States or remain. And in this case, the defendants and his stepfather put in an application that said, INS, will you allow Mr. Margaret Pilato to come in and live with me as the son of my fiance, even though he's a Mexican citizen. That was offered at trial. I know that that's a great concern of Judge Fernandez, but that was offered as evidence of his alienage. He was offered as a business man. Hearsay, wasn't it? The statements by Michael were hearsay. That is correct. So what's the exception for their disability? Business and public record. It was contained in the file. There are at least two levels of hearsay. He has no obligation to, he has no obligation as a public officer to give you accurate information for your public record. True, the record can come in. That's level of hearsay one is taken care of. Now we're at level of hearsay two, because what is is still hearsay. The statement is hearsay. The record isn't, but the statement is. How do you get in? That contents of documents that are maintained in the public are admissible, the contents of what is said in those public records. It's as if it was a check. But the contents weren't the statements by Michael. Correct. As Judge Fernandez just tried to point out, were not made by any government official who was in a position to record those statements for accuracy. Should the contents come in? And I take it you don't have any other hearsay, you don't put your finger on any other hearsay exception that will let it in beyond that? No, but what it does show is that as a matter of process, and this is why this proposed naturalization through legitimation does not make sense within the context of the immigration code, is that he made an application and it was not testimonial because it was not in response to interrogatories. Who he? Pardon? Who he? The defendant's stepfather. Michael. Correct. Not Carl. Put it in, submitted this form on behalf of a minor child and made representations and the representations were relied upon by the government. Yes. And then as a consequence of those representations, which were, this six-year-old child is a Mexican national, she is the son of a Mexican national, and that woman is going to marry me or has married me, can he come in, will you please grant him residency status? And in response to those representations, he was granted permanent residency status. What's your best case, your best case for the proposition, that if I make a representation to the government about you and the government acts on it, that's out of the hearsay? That the ó That's a hearsay exception. What's your best case for that? It would be, well, I'm not quite sure what the hypothetical is that you're asking. The hypothetical is I make a statement to the government. Correct. Regarding you. Yes. And it might be I say you're a wonderful man, whatever I say. I make the statement to the government and the government acts on it. I hope you'd be right on that. I would be. The government acts on that. The government says he's a wonderful man, we'll give him a gold medal. All right? Now, later on somebody wants to prove in court that you're a wonderful man. What exception says that because the government acted on my statement, that you're a wonderful man, what exception allows that to come into trial? In this particular case, that ó I was going to say what's your best case for this. Now, for that circumstance, I would have no exception, unless it was an administrative process that if there was, for instance, for the Congressional Medal of Honor, you'd have to have some kind of process with which you would make a representation. This person is a wonderful man, and he did these acts that were a great risk to him, and that would be an administrative process. And then the Congressional Medal of Honor or the Navy Cross would speak for itself. And now the administration changes, they want to prosecute you for doing those acts. You know, those kinds of things can't happen in countries. So you get it because you did these wonderful acts, and what they were is you squeezed information out of somebody or other, okay? And you get the Congressional Medal of Honor for doing those wonderful acts. Now they want to prosecute you for doing those acts. And you say, wait a minute. And then you have another administrative process with which either to, I don't know if it's possible, I don't know if under that circumstance for our hypothetical, whether the awarding vests, but that would, again, be another procedural administrative act. And in this case, I would try to take your hypothetical into something similar to our case, which would be an administrative process. And we would, and if there was an administrative process, there would be documents kept in the public record in the course of ordinary business where you made a declaration of I'm a wonderful person. Now there's a slight distinction between an application for permanent residency and maybe the administrative process for getting a gold medal. And in this case, the entire policy of the evidence code is to get to the truth. And are the statements more likely than not true? And in this case, we'd have a declaration against penal interest. And this person, if it serves his purpose to say I'm a U.S. citizen, please let me in, he would come in. But the purpose he wanted to serve in this case was to get permanent residency. And then had a declaration or an application that put in and said this person is a Mexican citizen. Will you please give him permanent residency? And he got what he wanted. He got what the defendant wanted. And then as a result of that, he then had his permanent residency, and then it was later rescinded because of his convictions and subsequent deportation. Was he actually deported or just ordered deported after he was released from prison? Oh, he was actually deported. He actually went over the border. Yes, and he came back. Then he was found. Then he came back. He was found the same year. Correct. And the evidence of that, you have a copy of the warrant of deportation and the stipulation. And the stipulation is that it is the defendant's fingerprint on that warrant of deportation. And the warrant came into evidence. We said that those documents aren't sufficient to establish alienation. The fact of deportation are not sufficient. But there is prior case law that says documents from the A file help establish alienage. Now, some of these facts were stipulated, weren't they, before the district judge. So he's trying to unravel the deportation, the first deportation on the ground, that he really was a citizen. Is that what he's trying to do? Correct. And in this case. The collateral attack on the 2006 deportation. Yes. But the meat of the matter in this case is not whether or not the procedural aspects of the deportation rendered it invalid. His argument was, by legitimation, I would derive my citizenship from my stepfather. So it's whether the substantive aspects of the deportation rendered it improper. And in this case, because it would make no sense for a foreign national to, as I said, take a unilateral action that would cause naturalization, that would frustrate it. And within that context, that is why, under Miller v. Albright, paternity is synonymous with blood relation. Okay. And that's always been. Thank you. I really just have two quick questions. First, addressing the evidentiary issues that you raised, Judge Fernandes. The government has conceded that the only conceivable way of getting this in under a hearsay analysis would be under the public records exception. And I think your observations regarding the fact that Mr. Michael Marget had no obligation under the law to make those representations are well taken. It does not fit within there. The government's ancillary argument that the Declaration Against Penal Interest argument fails. The Declaration Against Penal Interest exception also applies, fails also under a plain reading of the rule. That wasn't advanced in the trial court. It wasn't. In the district court, was it? I don't recall, Your Honor. I don't believe so, Your Honor. The alternative theory by the government is that it's not hearsay at all because it's relevant not for the truth of his alienage, but to show how the government responded. That, however, fails under relevance. And that objection was made in the trial court, is preserved, and it should be sustained here. And then lastly, I just note that with respect to this issue of whether or not a blood relationship is required, the prosecutor's argument is notably lacking in any citation to the actual statutes at issue here. The government apparently takes the position that it's just an implausible reading of the plain language of the statute and the court should decide it on that. Our position is the opposite, that the court follows the plain reading of the language, its existing precedents, the applicable methods of statutory construction, and the court will conclude that Mr. Marghese said so. Thank you. Thank you. The matter is submitted. Thank you. Our next case for argument is United States versus San Diego Gas and Electric Company.
judges: Goodwin, Fernandez, Paez